# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AJIRA AI LLC, an Illinois limited liability company, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., an Ohio corporation,<br><br>*Defendant*. | Case No.: 1:20-cv-4428<br><br>Honorable Joan B. Gottschall |

## DEFENDANT JPMORGAN CHASE BANK, N.A.'S BRIEF IN SUPPORT OF ITS MOTION TO STAY FURTHER PROCEEDINGS AND COMPEL ARBITRATION

Plaintiff Ajira AI LLC ("Ajira") is a JPMorgan Chase Bank, N.A. ("Chase") business customer that alleges Chase "impeded" Ajira in completing an application for a loan under the Paycheck Protection Program (the "PPP") by purportedly "prioritizing [] its favored customers over" Ajira and not properly processing its online application. (Compl. ¶¶ 4, 28.) Ajira's claims lack merit, but that point aside, these claims do not belong in court because Ajira agreed to arbitrate them. Ajira has a deposit account with Chase, and when opening this account, Ajira assented to Chase's Deposit Account Agreement ("DAA"), including its arbitration provision. Also, before applying for a PPP loan with Chase, Ajira agreed to Chase's Online Services Agreement ("Online Agreement"), which likewise contains an arbitration provision. Both agreements require Ajira to individually arbitrate its claims. The agreements further delegate any scope and enforceability questions to the arbitrator. Thus, once the Court sees that an agreement to arbitrate exists, the Court has nothing more to do other than grant this motion and compel Ajira to arbitrate its claims.[1]

Even if the Court were to take that additional step and determine whether Ajira's claims are covered by the DAA and Online Agreement (which it need not and should not do), Ajira must still be compelled to arbitrate. The DAA broadly requires arbitration of all claims arising out of or

---

[1] Courts in the Seventh Circuit routinely enforce similar arbitration agreements under the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ("FAA") and Illinois law. *See, e.g.*, *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 556–59 (7th Cir. 2003) (reversing district court, enforcing arbitration agreement, and ordering that claims against lender proceed to individual arbitration, as plaintiff class representative failed to "establish that the agreement preclude[d] them from effectively vindicating" its claims in the arbitral forum) (internal citation and quotations omitted); *Clements v. JPMorgan Chase Bank, N.A.*, No. 18 C 660, slip op. at 3–14 (N.D. Ill. Dec. 12, 2018) (enforcing arbitration provision in Chase DAA). Other courts around the country have likewise enforced the same or similar Chase arbitration agreements. *See, e.g., Dill v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 10947 (KPF), 2020 WL 4345755, at *2–8 (S.D.N.Y. July 29, 2020) (compelling arbitration); *Sunmonu v. Chase Bank, N.A.*, No. GLR-18-1695, 2019 WL 1258788, at *1–3 (D. Md. Mar. 19, 2019) (compelling arbitration); *Johnson v. JPMorgan Chase Bank, N.A.*, No. EDCV 17-2477 JGB (SPx), 2018 WL 4726042, at *3–8 (C.D. Cal. Sept. 18, 2018) (compelling arbitration); *Sanchez v. J.P. Morgan Chase Bank, N.A.*, No. 14-20468-CIV, 2014 WL 4063046, at *1–5 (S.D. Fla. Aug. 15, 2014) (compelling arbitration); *Scott v. JPMorgan Chase & Co.*, No. 13 Civ. 646 (KPF), 2014 WL 338753, at *2–10 (S.D.N.Y. Jan. 30, 2014) (ordering arbitration pursuant to DAA) *aff'd*, 603 Fed. App'x 33 (2d Cir. 2015) (summary order); *Novak v. JP Morgan Chase Bank, NA*, No. 06-14862, 2008 WL 907380, at *2–10 (E.D. Mich. Mar. 31. 2008) (compelling arbitration).

related to the DAA or Ajira's Chase account. And Ajira does not dispute that it was required to have an active Chase deposit account in order to apply for a PPP loan with Chase.[2] Plus, had Ajira's loan application been approved, PPP loan funds would have been deposited into its checking account at Chase, and Ajira's alleged injury stems from that alleged failure to receive PPP loan funds into that account.

The result is also the same under the Online Agreement's arbitration provision, which is also broad, and requires arbitration of all claims arising out of or relating to any online service provided by Chase. Ajira confirms in its Complaint that it submitted its PPP loan application using Chase's online service. (Compl. ¶¶ 28, 30, 48(c).) Therefore, both the DAA and Online Agreement encompass Ajira's claims in this action, which hinge on Ajira being a Chase deposit account holder that: (i) sought to obtain a PPP loan through Chase by filling out an online application; (ii) relied on its status as a Chase account holder and its existing Chase relationship for the loan; (iii) was required to have a Chase business checking account to even apply for a PPP loan through Chase; and (iv) was allegedly injured because it did not receive a loan deposited into its account quickly enough during the first round of PPP funding.

All issues of scope and enforceability are for the arbitrator, but the arbitration provisions are broad and cover Ajira's claims in any event. The Court should grant this motion, compel arbitration, and stay further proceedings pending completion of arbitration.

## BACKGROUND

**I.     Ajira Agreed to the DAA.**

Ajira has been a Chase account holder since June 2017, when it opened two Chase business accounts. When opening the accounts, Ajira confirmed its assent to the DAA by signing signature

---

[2] *See* Declaration of Sarah Pate Reynolds ("Reynolds Decl."), attached hereto as Exhibit 1, ¶ 3 ); CHASE FOR BUSINESS, Paycheck Protection Program FAQs and Useful Tips, https://recovery.chase.com/cares1/ppp-faqs (last visited October 5, 2020).

cards "acknowledg[ing] receipt of the Bank's Deposit Account Agreement[,] which include[d] all provisions that apply to this deposit account [] and agree[d] to be bound by the terms and conditions contained therein as amended from time to time." (Declaration of Mohamed Hammami, attached hereto as Exhibit 2, ¶¶ 2-3, Ex. A-B.)

>The DAA plainly confirms that it governs Ajira's business account:

>Whether you have a personal or business deposit account, this document is the basic agreement between you and us (JPMorgan Chase Bank, N.A. or "Chase"). By signing a signature card or submitting an account application, or by using any of our deposit account services, you and anyone else identified as an owner of the account agree to the terms in this agreement.

(Declaration of Laura L. Deck ("Deck Decl."), attached hereto as Exhibit 3, ¶ 6; Ex. B at p. 5.)[3] In addition, every monthly account statement sent by Chase to Ajira contained language expressly stating that Ajira's account is governed by the currently effective DAA. (*Id.* ¶ 9.)

## II. The DAA Contains a Binding Arbitration Provision.

The DAA provides that any disputes between Ajira and Chase are subject to mandatory arbitration:

>You and we agree that upon the election of either of us, ***any dispute relating in any way*** to your account or transactions will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court).
>This arbitration agreement is entered into pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").)

(Deck Decl., Ex. B at 23 (emphasis added).) The arbitration provision broadly covers any claims or disputes arising from or related to the DAA, as well as those arising from or relating to Ajira's accounts, transactions, or related services:

---

[3] Quotations herein to the DAA refer to the version of the DAA that was in effect when Plaintiff filed its Complaint on July 29, 2020. (Deck Decl. ¶ 6, Ex. B.)

3

> **What claims or disputes are subject to arbitration?**
>
> Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future. All such claims or disputes are referred to in this section as "Claims."

(*Id.* at 24.) The DAA outlines the procedures governing the arbitration, including: (1) how arbitration works; (2) the applicable rules; (3) the extent to which Chase will reimburse Ajira for the costs of arbitration; and (4) how to initiate a claim. (*Id.* at 23–24.)

Ajira was given the opportunity to "opt out" of arbitration by notifying Chase of such election within 60 days of opening its account by either calling a toll-free telephone number or by contacting a Chase banker. (Declaration of William A. Garrett, attached hereto as Exhibit 4, ¶ 2.) Despite having the choice to opt out of the arbitration agreement by calling a toll-free number or speaking to a Chase banker, Ajira never did so. (*Id.* ¶ 3.)

The DAA also requires Ajira's claims to be resolved via by arbitration on an individual basis and precludes any class litigation:

> YOU AND WE ALSO WAIVE ANY ABILITY TO ASSERT OR PARTICIPATE IN A CLASS OR REPRESENTATIVE BASIS IN COURT OR IN ARBITRATION. ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION WHEN EITHER YOU OR WE REQUEST IT.
> **What about class actions or representative actions?**
>
> Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. YOU AND WE AGREE NOT TO:
>
> 1. SEEK TO PROCEED ON ANY CLAIM IN ARBITRATION AS A CLASS CLAIM OR CLASS ACTION OR OTHER COMPARABLE REPRESENTATIVE PROCEEDING;

4

2. SEEK TO CONSOLIDATE IN ARBITRATION ANY CLAIMS INVOLVING SEPARATE CLAIMANTS (EXCEPT FOR CLAIMANTS WHO ARE ON THE SAME ACCOUNT), UNLESS ALL PARTIES AGREE;
3. BE PART OF, OR BE REPRESENTED IN, ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE; NOR
4. SEEK ANY AWARD OR REMEDY IN ARBITRATION AGAINST OR ON BEHALF OF ANYONE WHO IS NOT A NAMED PARTY TO THE ARBITRATION.

(Deck Decl., Ex. B at 23–24 (emphasis in original).)

### III. Ajira Agreed to the Online Agreement.

Ajira also agreed to arbitration when it accepted the Online Agreement. Ajira confirmed its acceptance of the Online Agreement on June 30, 2017, when a Chase User ID associated with Ajira's business account affirmatively clicked boxes acknowledging that it had read and accepted the Online Agreement. (*See* Declaration of Nicholas Sergi ("Sergi Decl.") ¶ 3, attached hereto as Exhibit 5.)[4] Ajira re-confirmed its acceptance of the Online Agreement each time it used Chase's online banking services by logging into Chase's online system under its User ID and password, (*id.*, Ex. B § 2), and when it utilized Chase's online portal to apply for PPP funding through Chase. (*See* Compl. ¶¶ 28, 30, 40, 48(c).)

### IV. The Online Agreement Contains a Binding Arbitration Provision.

The Online Agreement in effect at the time Ajira filed this lawsuit applies to any of Chase's "Online Services":

> This Online Service Agreement ("Agreement") states the terms and conditions that govern your use of Chase Online℠, Chase Mobile®, Chase Pay®, Chase Online for Business Banking, and J.P.Morgan Online and any applicable software products and associated documentation we may provide through those websites and mobile applications, ***or to use the products, services or functionality offered through those websites and mobile applications***, ("Software") and certain third party digital

---

[4] A second Chase User ID associated with Ajira's business account also affirmatively clicked boxes acknowledging that it had read and accepted the Online Agreement on July 2, 2017. (Sergi Decl. ¶ 4.)

5

platforms as determined by us from time to time (collectively, the "Online Service").

(Sergi Decl., Ex. B § 1 (emphasis added).) The Online Agreement broadly requires individual arbitration of any dispute relating in any way to the Online Agreement itself or to any Chase Online Service:

> **YOU HEREBY AGREE THAT ANY DISPUTE, CLAIM OR CONTROVERSY ARISING NOW OR IN THE FUTURE UNDER OR RELATING IN ANY WAY TO THIS AGREEMENT, OR TO THE ONLINE SERVICE ("CLAIM"), REGARDLESS OF THE NATURE OF THE CAUSE(S) OF ACTION ASSERTED (INCLUDING CLAIMS FOR INJUNCTIVE, DECLARATORY, OR EQUITABLE RELIEF), SHALL BE RESOLVED BY BINDING ARBITRATION. [] YOU FURTHER AGREE THAT YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION (SUCH AS AN ACTION IN THE FORM OF A PRIVATE ATTORNEY GENERAL) TO LITIGATE ANY CLAIMS IN COURT BEFORE EITHER A JUDGE OR JURY**[.]

(*Id.* § 12 (emphasis in original).) The Online Agreement explains that "[t]his binding arbitration provision applies to any and all Claims that you have against us [and] also includes ***any and all Claims regarding the applicability of this arbitration clause*** or the validity of the Agreement, in whole or in part." (*Id.* (emphasis added).) Ajira also confirmed its agreement to all other agreements governing its Chase account, including the DAA:

> In addition to this Agreement, you agree to be bound by and comply with such other written requirements as we may furnish to you in connection with either this service or products which may be accessed via this service, including, but not limited to, ***all account agreements***, end user license agreements, and with all applicable State and Federal laws and regulations.

(*Id.* § 9 (emphasis added).)

### V.     Ajira's Claims Are Within the Scope of the Arbitration Provisions.

With the DAA and Online Agreement in place, Ajira filed this action against Chase, asserting claims relating to Ajira's application for a Chase PPP loan. Ajira alleges that it applied for PPP funding via Chase's "online PPP loan application portal" on April 7, 2020. (Compl. ¶¶ 28,

6

30, 40, 48(c).) Ajira alleges in conclusory and unsupported fashion that it was unable to obtain a PPP loan because "Chase Bank had made the decision, internally, to prioritize the submission of PPP applications for its bigger and longstanding business clients over small businesses like, Ajira AI." (*Id.* ¶ 43.) Based on its alleged inability to secure a PPP loan online through Chase.com, (notwithstanding that over 280,000 businesses successfully obtained PPP loans through Chase and that when the PPP closed over $133 billion remained in the program for funding loans), Ajira brings claims against Chase for negligence, fraudulent concealment, tortious interference with prospective economic advantage, unjust enrichment, and deceptive practices under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"). (*Id.* ¶¶ 52–84.) Ajira purports to bring these claims on behalf of putative nationwide and Illinois classes of other Chase business account holders that met the criteria for receiving a PPP loan, and applied for or attempted to apply for a PPP loan through Chase, but whose applications were allegedly not processed on a first-come, first-served basis. (*Id.* ¶ 46.)

But under the DAA, Ajira agreed to individually arbitrate "any dispute relating in any way to [its] account or transactions [] by binding arbitration, and not through litigation in any court." (Deck Decl., Ex. B at 23.) Similarly, Ajira also agreed, through the Online Agreement's arbitration provision, to arbitrate all claims "under or relating in any way" to the Online Agreement "or to the Online Service." (Sergi Decl., Ex. B § 12.) Ajira concedes that it applied online for a Chase PPP loan because it "already held a [Chase] small-business account." (Compl. ¶ 39-40.) Indeed, only businesses with an active Chase business checking account were even able to apply for a PPP loan with Chase. (Reynolds Decl. ¶ 3.) This fundamental requirement is reflected in Ajira's own class definitions. (Compl. ¶ 46 (limiting the Class to "Chase Business Banking account holders").) Ajira, therefore, cannot dispute that all transactions and deposits relating to a Chase PPP loan had

7

to involve, and occurred only because of, its Chase Business account and by means of an online and electronic service. Ajira's claims, therefore, necessarily arise out of and relate to their accounts, transactions, and online services with Chase and are governed by the DAA, the Online Agreement, and their arbitration provisions.

## **LEGAL STANDARD**

Section 2 of the FAA states that written arbitration agreements "evidencing a transaction involving [interstate] commerce [] shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This embodies a "liberal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Courts have long interpreted the FAA with a "healthy regard for the federal policy favoring arbitration" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

"To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus.*, 466 F.3d 577, 580 (7th Cir. 2006). While "the threshold question of 'whether the parties have submitted a particular dispute to arbitration, *i.e.*, the *question of arbitrability*,' is generally to be decided by the court," that general rule is set aside where "'the parties clearly and unmistakably provide otherwise.'" *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 719 (N.D. Ill. 2014) (quoting *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002)). The Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and unmistakable evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (internal citations and quotations omitted). If the parties so

8

delegate, "a court possesses no power to decide the arbitrability issue [] even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at 529.

## ARGUMENT

**I.  The FAA Applies and Requires that this Dispute Be Sent to Arbitration**

The liberal federal policy favoring arbitration agreements creates a strong presumption favoring enforcement and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Based on the express language of the arbitration provisions in both the DAA and the Online Agreement, the FAA applies. The FAA also applies because the DAA and Online Agreements are contracts involving interstate commerce, *see, e.g.*, *Kemph v. Reddam*, No. 13 CV 6785, 2015 WL 1510797, at *2 (N.D. Ill. Mar. 27, 2015) (recognizing that financing agreements were contracts involving interstate commerce), as the Complaint alleges transactions between citizens of different states. (Compl. ¶¶ 8–9.) The FAA requires courts to "rigorously enforce" arbitration agreements according to their terms to further the purpose of the FAA and facilitate streamlined proceedings. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see also AT&T Mobility*, 563 U.S. at 339; *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

**II.  Ajira Assented to the DAA and Online Agreement When it Opened its Chase Accounts and Applied for a PPP Loan Using Chase's Online Portal.**

Ajira agreed to arbitrate its claims in multiple ways. First, Ajira assented to the DAA when it opened its Chase accounts, executed a signature card for its Chase account, and acknowledged receipt of the DAA. Second, Ajira assented to the Online Agreement when it affirmatively clicked separate boxes confirming that it had read and agreed to the Online Agreement and then utilized Chase's online portal to apply for a PPP loan.

9

### a. Ajira agreed to the DAA by executing a signature card.

While the FAA governs the enforceability of the Arbitration Agreement, Illinois law controls whether a valid arbitration agreement exists. (Deck Decl., Ex. B at 20 (agreeing that the DAA is "governed by federal law and, when not superseded by federal law, the law of the state where your account is located").) This Court sits in diversity, so Illinois choice of law rules control. *See Wachovia, Sec., LLV v. Banco Panamericano*, 674 F.3d 743, 751 (7th Cir. 2012) ("In diversity cases, we look to the substantive law of the state in which the district court sits") (internal citations omitted). Illinois law generally gives effect to parties' choice of law clauses in a voluntary agreement. *See Midway Home Entm't v. Atwood Richards Inc.*, No. 98 C 2128, 1998 WL 774123, at *3 (N.D. Ill. Oct. 29, 1998) (choice-of-law provision enforced even where chosen forum "left the Illinois residents no recourse"). Ajira's account is in Illinois, so Illinois law applies per the terms of the parties' agreement. (Deck Decl., Ex. B at 20.)

An arbitration agreement's validity is analyzed using "state contract law governing the formation of contracts." *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005). In Illinois, an offer, acceptance, and consideration are the "basic ingredients" of a contract. *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006). "'A binding contract between a bank and a depositor is created by signature cards and a deposit agreement.'" *Kaplan v. JPMorgan Chase Bank, N.A.*, No. 14 C 5720, 2015 WL 2358240, at *5 (N.D. Ill. May 12, 2015) (quoting *Continental Cas. Co. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 768 N.E.2d 352, 357 (Ill. App. Ct. 2002)).

Such a contract was plainly formed in the DAA: (1) Chase offered to provide banking services to Ajira pursuant to the DAA; (2) Ajira accepted Chase's offer by signing signature cards and using Chase's banking services; and (3) valid consideration underlies the parties' mutual obligations in the DAA. *See Kaplan*, 2015 WL 2358240, at *1, 5 (binding contract formed via signed signature card that references Chase rules and regulations); *Continental Cas.*, 768 N.E.2d

at 357–58 (collecting cases showing that a signature card and deposit agreement form a contract between a bank and its customer).

The DAA's arbitration agreement is unquestionably a valid contract under Illinois law. *See Perik v. JP Morgan Chase Bank, U.S.A., N.A.*, Nos. 1-09-3088, 1-10-1320, 2011 WL 10068062, at *10 (Ill. App. Ct. Dec. 15, 2011) (affirming order compelling arbitration where plaintiff demonstrated intent to be bound by Chase deposit agreement by "signing the signature card" and continuing to use the account).

### b. Ajira also affirmatively agreed to the Online Agreement.

Ajira also agreed to arbitrate its claims when it agreed to the Online Agreement, used Chase's online services, and submitted its PPP application through Chase's online portal. "Signifying agreement by clicking on a box on the screen," a "type of assent called clickwrap," "generally provides adequate notice." *Sherman v. AT&T Inc.*, No. 11 C 5857, 2012 WL 1021823, at *3 (N.D. Ill Mar. 26, 2012) (citing *Treiber & Straub, Inc. v. UPS*, 474 F.3d 379, 382 (7th Cir. 2007) ("signif[ying] agreement by clicking on a box on the screen" is "common in Internet commerce")); *see also Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *4–5 (N.D. Ill. June 12, 2018) (granting motion to compel arbitration where "it would have been impossible for any of the plaintiffs to create a PayPal account" without "affirmatively check[ing] a box, or click[ing] a button, indicating that they accepted the user agreement"); *O'Quinn v. Comcast Corp.*, No. 10 C 2491, 2010 WL 4932665, at *3 (N.D. Ill. Nov. 29, 2010) (compelling arbitration where "Comcast [] require[d] the customer to click a box accepting the Customer Agreement in order to access Comcast's Internet service for the first time").

Here, Ajira expressly assented to the Online Agreement when it affirmatively clicked separate boxes confirming that it had read and agreed to the Online Agreement. (Sergi Decl. ¶¶ 3-

11

4.) By clicking the boxes, Ajira not only confirmed that it had read and agreed to the Online Agreement, but again confirmed its assent to the DAA, the Online Agreement incorporates by reference. (*Id.*, Ex. B § 9.)

### III. The DAA and Online Agreement Delegate Questions of Scope and Enforceability to the Arbitrator.

"[P]arties can agree to arbitrate 'gateway questions of arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr.,* 561 U.S. at 68–69. To do so, the agreement must "clearly and unmistakably" express an intent to arbitrate gateway questions of arbitrability in their agreement. *Howsam*, 537 U.S. at 83–84. Northern District courts consistently hold that incorporating the private arbitration association rules "constitutes clear and unmistakable evidence" that the parties agreed to delegate threshold arbitrability questions to the arbitrator. *In re Dealer Mgmt. Sys. Antitrust Litig.*, Nos. 18-cv-864, 1:19-cv-1412, 2020 WL 832365, at *4–6 (N.D. Ill. Feb. 20, 2020) (collecting dozens of cases and holding that parties delegate question of arbitrability to an arbitrator where their agreement incorporates the AAA Rules).

Both the DAA and Online Agreements expressly provide that the JAMS and AAA rules govern any arbitration. (Deck Decl., Ex. B at 24; Sergi Decl., Ex. B § 12.) The JAMS and AAA rules, in turn, make clear that questions of arbitrability are delegated to the arbitrator. *See* Rule JAMS 11(b) ("The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter");[5] Rule AAA R-7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim").[6]

---

[5] https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11

[6] https://www.adr.org/sites/default/files/CommercialRules_Web.pdf

Additionally, the Online Agreement states that the "binding arbitration provision" applies to "any and all Claims regarding the applicability of this arbitration clause or the validity of the Agreement, in whole or in part." (Sergi Decl., Ex. B § 12.) These agreements "clearly and unmistakably" show that the parties have delegated the threshold issue of arbitrability to the arbitrator. Accordingly, all disputes regarding the arbitrability of Ajira's claims must be decided by the arbitrator. *See Helferich*, 51 F. Supp. 3d at 720 (collecting cases and holding that incorporation of AAA rules into agreement evidenced parties' intent to have an arbitrator decide questions of arbitrability).

### IV. Even if the Court Reaches Questions of Scope, Ajira's Claims Are Covered.

Faced with a valid arbitration agreement and a delegation provision, the Court should not proceed further into the question of scope. But even if the Court were to consider that question, it is clear that Ajira's claims against Chase fall squarely within the scope of the two arbitration agreements. In the Seventh Circuit, it is "harder to draft a broader clause" in the arbitration context than one with "relating to" language. *Carbajal v. H&R Block Tax Servs.*, 372 F.3d 903, 1067 (7th Cir. 2004); *see Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909–10 (7th Cir. 1999) ("arising out of or relating to" language is "extremely broad[,] capable of an expansive reach," and "necessarily create[s] a presumption of arbitrability"). Such clauses should be construed expansively in favor of compelling arbitration. *See Info. Sys. Audit & Control Ass'n v. TeleComm. Sys.*, No. 17 C 2066, 2017 WL 2720433, at *3–5 (N.D. Ill. June 23, 2017) (Gottschall, J.); *Bahoor v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1109–10 (N.D. Ill. 2015) (compelling arbitration of claims given the broad nature of the "arising out of or relating to" language in the parties' agreement).

An "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers

13

the asserted dispute." *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986). "Where the arbitration provision is broad, as it is here, only an 'express provision excluding a particular grievance from arbitration or the most forceful evidence of a purpose to exclude the claim from arbitration' can keep the claim from arbitration." *Exelon Generation Co., LLC v. Local 15, Int'l Bhd of Elec. Workers, AFL–CIO*, 540 F.3d 640, 646 (7th Cir. 2008) (quoting *AT&T Techs.*, 475 U.S. at 650).

Here, the DAA covers "any claims or disputes arising from or relating to this agreement," as well as "any dispute relating in any way to your account or transactions," including any "[c]laims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and ***any related service*** with us [and any] claims or disputes arising from or relating to this agreement, [or] any prior agreement between us[.]" (Deck Decl., Ex. B at 23–24) (emphasis added).) Ajira's allegations easily fall within this broad provision.

The dispute here plainly arises out of and relates to Ajira's Chase accounts and "any related service" because, but for those accounts, Ajira would not and could not have applied for a PPP loan through Chase. Ajira's very own class definitions make clear that all of the alleged claims are inextricably tied to its status as a Chase business deposit account holder. (Compl. ¶ 46 (limiting the Class to "Chase Business Banking account holders").) Ajira also admits that it applied for a PPP loan with Chase because it "already held a [Chase] small-business account." (*Id.* ¶ 39), and Ajira could not have applied for a PPP loan through Chase without a Chase Business deposit account. (Reynolds Decl. ¶ 3.) Further, the supposed inability to obtain a timely PPP loan impacted Ajira's accounts because that is where the PPP loan proceeds were or would have been deposited. (*Id.* ¶ 2.)

Ajira's chosen claims (although meritless) also confirm that they arise out of Ajira's Chase accounts. The claim for negligence relies on an alleged "duty of care [owed] to those who use [Chase] to apply for SBA loans." (Compl. ¶ 53.) Similarly, Ajira's claim for fraudulent concealment asserts that Chase owed a duty to speak based on the fact that Ajira applied as a Chase business customer and "existing business partner." (*Id.* ¶ 63.) The claim for tortious interference also hinges on Ajira's status as a Chase account holder, as it alleges that Chase had knowledge of a business expectancy "to the extent it received a PPP loan application from Plaintiff and the putative Class." (*Id.* ¶ 69.) Finally, the claims for violation of the ICFA and for unjust enrichment rely on Ajira's assertions that it "applied, or attempted to apply for" PPP loans from Chase. (*Id.* ¶ 77; *see id.* ¶ 82–83 .)

Finally, the Online Agreement's arbitration provision covers any claim related to the Online Agreement or to *any online service* provided by Chase, which directly covers the online PPP loan application portal Ajira used. (*Id.* ¶¶ 28, 30, 48(c).) Thus, although the scope of the arbitration is an issue for the arbitration, the claims asserted in this case are covered by the broad arbitration provisions in any event.

### V. This Action Should Be Stayed Pending Arbitration.

Under the FAA, a court should grant a motion to stay judicial proceedings after compelling arbitration. *See* 9 U.S.C. § 3 (requiring court to issue a stay upon compelling arbitration); *see also Rent-A-Ctr.*, 561 U.S. at 68. The Court should therefore stay all further proceedings against Chase until Ajira and Chase complete arbitration.

### CONCLUSION

For the foregoing reasons, this Court should enter an order (i) compelling Ajira to arbitrate its claims on an individual basis and (ii) staying this action pending completion of arbitration.

Dated: October 5, 2020

Respectfully submitted,

By: /s/ *Jonathan H. Claydon*
Paul J. Ferak
Jonathan H. Claydon
Thomas J. Sotos
**GREENBERG TRAURIG, LLP**
77 W. Wacker Dr., Suite 3100
Chicago, IL 60601
Telephone: (312) 456-8400
ferakp@gtlaw.com
claydonj@gtlaw.com
sotost@gtlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing has been served on counsel of record through the Court's CM/ECF system on October 5, 2020.

*/s/ Jonathan H. Claydon*
