IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Sha-Poppin Gourmet Popcorn LLC and Ajira AI LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 20-cv-2523 Case No. 20-cv-4428 |
| v. | ) ) | Judge Joan B. Gottschall |
| JPMorgan Chase Bank, N.A., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are the motions of defendant JP Morgan Chase Bank, N.A. ("Chase"), to stay these cases and compel plaintiffs to arbitrate their claims in accordance with Chase's deposit account agreement and two online services agreements. *See* Mot. to Stay & Compel at 2–4, ECF No. 59; Mot. to Stay & Compel at 1–4, No. 20-cv-4428, ECF No. 12.[1] For the following reasons, the court grants Chase's motions to compel arbitration under the deposit account agreement.

**I. Background**

Plaintiff Sha-Poppin Gourmet Popcorn LLC ("Sha-Poppin"), is a five-employee gourmet popcorn company based in Westchester, Illinois. *See* Am. Compl. ¶¶ 55–56, ECF No. 69. Plaintiff Ajira AI LLC ("Ajira") is a four member technology company based in Lisle, Illinois. *See* Compl. ¶¶ 4, 8, 36, No. 20-cv-4428, ECF No. 1.

---

1   Except where a case number is used, citations to the docket refer to case No. 20-cv-2523.  The parties filed their consolidated response brief and exhibits on the *Sha-Poppin* docket, No. 20-cv-2523, but not on the *Ajira* docket, No. 20-cv-4428.  Plaintiffs' consolidated response brief and the accompanying exhibits (ECF Nos. 71, 71-1, 72-2, 72-3, No. 20-cv-2523) are also part of the record in *Ajira*, No. 20-cv-4428.

The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281, was enacted on March 27, 2020, in an effort to mitigate the economic impact of COVID-19-related shutdowns. The CARES Act initially made $349 billion in small business loans available under the Paycheck Protection Program ("PPP"). *See* CARES Act §§ 1102, 1106, 134 Stat. at 286–94, 297–301. The U.S. Small Business Administration ("SBA") oversaw the PPP program, but private lenders, including Chase, processed all loan applications and made the loans. *See id.* An SBA regulation required lenders to process PPP loan applications on a "first-come, first-served" basis. Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, 20813 (Apr. 15, 2020).

Plaintiffs allege that Chase did not process loans on a first-come, first-served basis but instead gave preferential treatment to certain large or politically connected customers. *See* Am. Compl. ¶¶ 36–54, ECF No. 69; Compl. ¶¶ 28–35, No. 20-cv-4428, ECF No. 1. Both plaintiffs unsuccessfully attempted to apply for PPP loans through Chase's website. Am. Compl. ¶¶ 60–61; Compl. ¶¶ 40–42, No. 20-cv-4428. At the suggestion of a Chase employee, Sha-Poppin eventually obtained a PPP loan from another lender, but Sha-Poppin alleges that the loan it obtained was four times smaller than it would have been if Chase had processed its application on a first-come, first-served basis. Am. Compl. ¶¶ 63, 65.

Plaintiffs seek to represent a national class comprised of "[a]ll Chase Business Banking account holders that met the criteria for receiving a loan under the PPP, applied for, or attempted to apply for, a PPP loan through Chase, and whose application was not processed on a first-come, first-served basis," as well as an Illinois subclass. *See* Am. Compl. ¶ 70; Compl. ¶ 46, No. 20-cv-4428. Both plaintiffs bring five claims against Chase. In order of pleading, they are a negligence claim; a fraudulent concealment claim; a claim for tortious interference with

prospective economic advantage; a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1 et seq.; and an unjust enrichment claim. Am. Compl. 23–31; Compl. 14–20, No. 20-cv-4428.

### A. The Deposit Account Agreement

Chase required customers to have a business banking account to apply for a PPP loan. Reynolds Decl. ¶ 3, ECF No. 60 Ex. 1. Sha-Poppin opened a Chase business checking account in 2018; Ajira opened business checking and savings accounts with Chase in 2017. *See* Hawkins-Armstrong Decl. ¶ 5, ECF No. 71-3; Hammami Decl. ¶ 2, ECF No. 60 Ex. 2; *id.* Ex. 2-A (Sha-Poppin signature card); Mehta Decl. ¶ 4, ECF No. 71-2; Hammami Decl. ¶¶ 2–3, No. 20-cv-4428, ECF No. 13 Ex. 2; *id.* Exs. 2-A, 2-B (Ajira signature cards). Sha-Poppin and Ajira's principals acknowledged receipt of Chase's deposit account agreement (sometimes "DAA") when they opened the accounts. *See* Hammami Decl. ¶ 5, No. 20-cv-4428, ECF No. 13 Ex. 2; *id.* Ex. 2-A (Ajira signature card); Hammami Decl. ¶ 4, ECF No. 60 Ex. 2; *id.* Exs. 2-A, 2-B (Sha-Poppin signature cards). Neither plaintiff had a lawyer, and neither asked anyone to review the DAA. Hawkins-Armstrong Decl. ¶ 5; Mehta Decl. ¶ 4. Sha-Poppin founder and manager, Stacey Hawkins-Armstrong ("Hawkins-Armstrong"), and Ajira's CEO, Sandeep Mehta ("Mehta"), aver that they "understood that the terms pertaining to the deposit account [agreement] would only affect that account and any services related to that account." *Ibid.* Plaintiffs' monthly account statements reminded them that the DAA governed their accounts. Deck Decl. ¶ 9, No. 20-cv-4428, ECF No. 13 Ex. 3; Deck Decl. ¶ 9, ECF No. 60 Ex. 3.

The deposit account agreement contains the following arbitration clause:

12. Arbitration

You and we agree that upon the election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration as

discussed below, and not through litigation in any court (except for matters in small claims court).

. . . .

What claims or disputes are subject to arbitration?

Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future. All such claims or disputes are referred to in this section as "Claims."

The only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis.

. . .

What about class actions or representative actions?

Claims in arbitration will proceed on an individual basis, on behalf of the named parties only. . . . .

. . .

How does arbitration work?

The party filing a Claim in arbitration must select either: JAMS or the American Arbitration Association ("AAA") as the arbitration administrator. That organization will apply its code of procedures in effect at the time the arbitration claim is filed. If there is a conflict between that code of procedures and this arbitration provision and/or this agreement, this arbitration provision and this agreement will control. In the event that JAMS or the AAA is unable to handle the Claim for any reason, then the matter shall be arbitrated instead by a neutral arbitrator selected by agreement of the parties (or, if the parties cannot agree, selected by a court in accordance with the FAA), pursuant to the AAA rules of procedure. . . .

DAA 15–16, ECF No. 60 Ex. 3-A.

4

### B. *Chase's Online Services Agreement and Digital Services Agreement*

Chase also seeks to enforce arbitration clauses in two so-called "click wrap" agreements (meaning agreements assented to online): (1) Chase's digital services agreement (sometimes "DSA") against both plaintiffs, and (2) its online services agreement ("OSA") against Ajira only. Chase relies on two substantially identical declarations of its executive director of digital services, Nicholas Sergi ("Sergi"), to show that plaintiffs agreed to the terms of the OSA and DSA. *Compare* Sergi Decl., ECF No. 60 Ex. 5, *with* Sergi Decl., No. 20-cv-4428, ECF No. 13 Ex. 5.

Regarding Sha-Poppin, Sergi avers, "I understand that Stacy L. Hawkins Armstrong is a signer on Sha-Poppin's account ending in 7539. On March 19, 2018, the Chase.com User ID for Stacy L. Hawkins Armstrong, which is affiliated with Sha-Poppin's account, was used to agree to Chase's Digital Services Agreement. During the enrollment process, the Chase.com User ID for Stacy L. Hawkins Armstrong was required to and did affirmatively click boxes acknowledging that the user had read and accepted the Digital Services Agreement." Sergi Decl. ¶ 3, ECF No. 60 Ex. 5. Sergi's declaration regarding Ajira's assent is substantively identical. *See* Sergi Decl. ¶¶ 3–4, No. 20-cv-4428, ECF No. 13 Ex. 5.

Hawkins-Armstrong and Mehta recall signing up for Chase's online services shortly after opening their accounts. *See* Hawkins-Armstrong Decl. ¶ 6; Mehta Decl. ¶ 5. However, neither recalls "any procedures associated with the online sign up process," "being presented with or agreeing to any specific agreement," nor receiving a communication from Chase advising them that the DSA, or any other prior agreement, applied to their PPP loan applications. *See* Hawkins-Armstrong Decl. ¶¶ 6–7; Mehta Decl. ¶ 5–6.

## II. Discussion

When it enacted the Federal Arbitration Act ("FAA") in 1925, Congress adopted a "liberal federal policy favoring arbitration." *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 800 (7th Cir. 2020) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)) Section two of the FAA provides: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[T]his provision requires federal courts to 'place [arbitration] agreements upon the same footing as other contracts.'" *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643 (2020) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989)) (internal quotations omitted). To succeed on their motion to compel arbitration, defendants must show three things: "(1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (quoting *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017)). Plaintiffs have refused to arbitrate, so only the first two requirements are at issue here.

### A. The Deposit Account Agreement is an Enforceable Agreement to Arbitrate.

State law principles of contract formation determine whether an enforceable agreement to arbitrate exists. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006) (citing *Continental Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730 (7th Cir.2005) (other citations omitted). The parties agree that Illinois law governs contract formation here. *See* Joint Resp. Opp'n 5–6, ECF No. 71.

Plaintiffs do not dispute that they are bound by the deposit account agreement. Joint Resp. Opp'n 4. Under Illinois law, the signed signature cards for plaintiffs' Chase accounts acknowledging receipt of the DAA demonstrate plaintiffs' assent to the DAA's terms. *See Kaplan v. JPMorgan Chase Bank, N.A.*, 2015 WL 2358240, at *5 (N.D. Ill. May 12, 2015); *Perik v. JP Morgan Chase Bank, U.S.A., N.A.*, 2011 WL 10068062, at *10 (Ill. App. Ct. 1st Dist. Dec. 15, 2011).

Plaintiffs argue that Chase has not carried its burden to show that they assented to the online services agreement and digital services agreement. Joint Resp. Opp'n 5–7. They contend that Sergi's declarations lack the specificity Illinois law requires to prove assent to a "click wrap" contract. Illinois law, as interpreted by the Seventh Circuit, requires a "fact-intensive" analysis of "whether the web pages presented to the consumer adequately communicate all the terms and conditions of the agreement, and whether the circumstances support the assumption that the purchaser receives reasonable notice of those terms." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034–36 (7th Cir. 2016). The court need not determine whether the evidence properly before it[2] proves that plaintiffs assented to the terms of the OSA and DSA, however, because, as discussed below, the deposit account agreement's arbitration clause is sufficient to grant Chase's motion to compel arbitration.

---

2 Chase maintains that the declarations attached to its motions to compel are sufficient but attaches more detailed declarations to its reply. *See* ECF No. 76 Exs. 1, 2, 4, 5. Evidence attached to a reply cannot be considered, however, because the opposing party has not had an opportunity to respond to it. *See, e.g.*, *Thompson v. AT&T Servs., Inc.*, 2018 WL 4567714, at *6 (N.D. Ill. Sept. 24, 2018) (citations omitted).

### B. The Deposit Account Agreement Clearly and Unmistakably Delegates Arbitrability to the Arbitrator.

Plaintiffs contend that their claims concern Chase's administration of the PPP loan program rather than their deposit accounts and therefore lie beyond the scope of the DAA's arbitration clause. *See* Joint Resp. Opp'n 13–20. Chase responds that the DAA's arbitration clause uses very broad language: "arising from or relating to this agreement" and "any dispute relating in any way to your account or transactions." DAA at 15, 16; *see also Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1034 (7th Cir. 2012) (characterizing "arising out of or relating to" language as broad) (citation omitted). According to Chase, these lawsuits relate to plaintiffs' accounts within the meaning of the DAA because Chase required PPP loan applicants to have a Chase business banking account. Mem. Supp. Mot. to Stay & Compel 7–8, ECF No. 60; Mem. Supp. Mot. to Stay & Compel 7–8, No. 20-cv-4428, ECF No. 13. Before deciding whether plaintiffs' claims fall within the scope of the DAA's arbitration clause, the court must first determine whether, as Chase argues, the parties have agreed that the arbitrator should decide the question.

Presumptively, the court, not the arbitrator, decides "certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013) (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion)); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, an agreement to submit a dispute over arbitrability to the arbitrator will be enforced where there is " 'clear and unmistakable evidence' that the parties wanted an arbitrator to resolve the dispute." *Oxford*, 569 U.S. at 569 n.2 (quoting *AT & T Techs. Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)) (brackets omitted).

Chase argues that the DAA's arbitration clause clearly and unmistakably delegated arbitrability by incorporating the rules of the American Arbitration Association ("AAA") and JAMS Mediation, Arbitration and ADR Services ("JAMS"). *See* DAA at 16. One of the AAA's rules provides, "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." [3] The JAMS rules similarly state, "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." JAMS Comprehensive Arbitration Rule 11(b).

Every federal court of appeals to consider the question–twelve of thirteen–has "found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.' " *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (collecting citations). The Seventh Circuit appears to be the only circuit that has not ruled on this question. *Id.* Although the opinions of other circuits are not binding on this court, such a broad consensus carries considerable persuasive weight. *See Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 507 (7th Cir 2018).

Furthermore, the "consensus view" in this district accords with the consensus among the federal courts of appeals: incorporating the AAA's rules, or similar rules, into a contract clearly and unmistakably delegates arbitrability to the arbitrator. *See Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 410 F. Supp. 3d 882, 888 (N.D. Ill. 2019),

---

3    *Commercial Arbitration Rules and Mediation Procedures*, American Arbitration Association (Oct. 1, 2013), https://www.adr.org/sites/default/files/CommercialRules_Web-Final.pdf.

9

*appeal dismissed,* 2020 WL 6257027 (7th Cir. Oct. 15, 2020) (collecting cases in this district); *Wal-Mart Stores, Inc. v. Helferich Pat. Licensing, LLC*, 51 F. Supp. 3d 713, 720–21 (N.D. Ill. 2014). Plaintiffs cite no federal district court in the Seventh Circuit that has departed from the consensus view. *See* Joint Resp. Opp'n 7–13.

Also persuasive are decisions enforcing the agreement at issue here. Chase has filed at least two other motions to compel arbitration in suits challenging its administration of the PPP loan program. Both courts compelled arbitration. Consistent with the consensus view, one court concluded that the DAA's arbitration clause clearly and unmistakably delegates arbitrability to the arbitrator by incorporating the AAA and JAMS rules. *KPA Promotion & Awards, Inc. v. JPMorgan Chase & Co.*, 2021 WL 1317163, at *4 (S.D.N.Y. Apr. 8, 2021). The other court found it unnecessary to reach the question but added in a footnote that it would likely reach the same conclusion under the clear and unmistakable standard. *See Hyde-Edwards Salon & Spa v. JP Morgan Chase & Co.*, 2020 WL 6871050, at *3 n.1 (S.D. Cal. Nov. 23, 2020). This court finds cases espousing the majority view to be well-reasoned and joins the consensus that incorporating the AAA rules or similar rules clearly and unmistakably delegates arbitrability to the arbitrator.

Plaintiffs cite a smattering of district court opinions from outside the Seventh Circuit holding that, at least where an unsophisticated consumer or business is involved, incorporating the AAA's rules does not evince the parties' clear and unmistakable intent to delegate arbitrability. *See, e.g.*, *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 555 (D. Md. 2019); *Allstate Ins. Co. v. Toll Bros., Inc.*, 171 F. Supp. 3d 417, 429–30 (E.D. Pa. 2016); *Meadows v. Dickey's Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1078–79 (N.D. Cal. 2015). Here again, every federal appellate court to have considered distinguishing between sophisticated and

unsophisticated parties has declined to do so because the distinction lacks support in the text of the Federal Arbitration Act. *See Blanton*, 962 F.3d at 851 (citing cases); *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 104 (3d Cir. 2020), *cert. denied,* 141 S. Ct. 1685 (2021) (reversing decision relied on in *Stone*). The Ninth Circuit reserved the question in *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015), because the case did not involve an unsophisticated party. Even so, the court observed that "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent to do so [do not explicitly limit] that holding to sophisticated parties or to commercial contracts." *Id.* (citations omitted). Plaintiffs point to nothing in the FAA's text, history, or structure to support drawing a distinction between sophisticated and unsophisticated parties. *See Stone*, 361 F. Supp. 3d at 555–56; *Allstate*, 171 F. Supp. 3d at 429; *Meadows*, 144 F. Supp. 3d at 1078–79.

Nevertheless, how the court should decide whether these plaintiffs are unsophisticated has not been explained. Both plaintiffs are businesses, albeit ones small enough to qualify for a small business loan. They apparently want the court to find them unsophisticated based on the bare facts that they have five or fewer employees and did not have a lawyer review the deposit account agreements (the court does not know whether plaintiffs could have afforded a lawyer). *See* Joint Resp. Opp'n 11 n.7. This record is insufficiently developed to decide whether plaintiffs are unsophisticated. Accordingly, this court leaves for another day the question whether incorporating the AAA or similar rules clearly and unmistakably delegates arbitrability when a consumer or unsophisticated party is involved. *See Brennan*, 796 F.3d at 1030–31.

Plaintiffs make one final argument. They maintain that the DAA's arbitration clause is ambiguous because it gives the parties a choice between the JAMS and AAA rules. *See* DAA

11

at 16. According to plaintiffs, the JAMS rule requires the arbitrator to decide arbitrability issues while the AAA rule gives the arbitrator and the court concurrent jurisdiction over such issues. Joint Resp. Opp'n 12–13. The alleged conflict between the JAMS and AAA rules does not exist, however. As explained in detail in *Blanton*, 962 F.3d at 849–50, the text and history of the AAA rule, as well as judicial decisions interpreting it, confirm that the rule vests the arbitrator with exclusive jurisdiction to decide arbitrability issues.

### III. Conclusion

For the reasons stated, Chase's motions to compel arbitration in accordance with the deposit account agreement and to stay these suits is granted. Plaintiffs are ordered to arbitrate these actions consistent with the deposit account agreement. *See* 9 U.S.C. §§ 2–3.

Dated: August 10, 2021                                    /s/
                                                                    Joan B. Gottschall
                                                                    United States District Judge